UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIE LOUISE R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> Commissioner of Social Security <br> Administration,[2] <br><br> Defendant. | Case No. 1:23-cv-00029-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint with the Court seeking judicial review of the Commissioner's denial of her application for a period of disability and disability insurance benefits. (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 15, 21, 22.) Having carefully reviewed the parties' memoranda and the administrative record ("AR"), the Court will remand the decision of the Commissioner for the reasons explained below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley was sworn in as the Commissioner of Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley will be substituted as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## BACKGROUND

On August 2, 2019, Plaintiff filed a Title XVI application for supplemental security income, claiming disability beginning March 6, 2017. (AR 151.) On the date the application was filed, Plaintiff was 47 years of age. (AR 30.)

The application was denied initially and on reconsideration, and a hearing was conducted by telephone on June 3, 2021, before Administrative Law Judge (ALJ) Jesse Shumway. (AR 151.) After considering testimony from Plaintiff and vocational expert (VE) D.T. North, the ALJ issued a decision on June 18, 2021, finding Plaintiff had not been under a disability from August 2, 2019, the date the application was filed. (AR 161.)

Plaintiff timely requested review by the Appeals Council. The Appeals Council remanded the matter on March 25, 2022, directing the ALJ to consider additional evidence received on June 17, 2021, and if warranted, to obtain additional evidence. (AR 18, 171 – 172.) The ALJ was further directed to give additional consideration to Plaintiff's maximum residual functional capacity during the period at issue and, if warranted by the expanded record, obtain supplemental evidence from a vocational expert. (AR 18.)

The ALJ conducted a second hearing by telephone on August 2, 2022. (AR 18.) After considering testimony from Plaintiff, the ALJ issued a decision on August  31, 2022, finding Plaintiff had not been under a disability since August 2, 2019. (AR 31.)[3] Plaintiff timely requested review by the Appeals Council, which denied her request for

---

[3] The ALJ elected not to hear additional testimony from a vocational expert at this second hearing. Plaintiff was represented by legal counsel at both hearings. (AR 40, 65.)

**MEMORANDUM DECISION AND ORDER  - 2**

review on November 22, 2022. (AR 1-6.) She next timely appealed this final decision to the Court on January 19, 2023. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Court must uphold the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step[4] sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 2, 2019, the application date. (AR 20.) At step two, the ALJ found Plaintiff had the following medically determinable, severe impairments: "degenerative disc disease of the lumbar and cervical spine; diabetes with peripheral neuropathy; obesity; adhesive capsulitis, bilateral shoulders; and mild bilateral carpal tunnel syndrome, status post left release surgery (June 2020)." (AR 20 – 21.)

---

[4] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v)."

MEMORANDUM DECISION AND ORDER  - 4

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or were medically equal to Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.18 (Abnormality of a major joint(s) in any extremity, Listing Section 9.00 (Endocrine Disorders), or Listing 11.14 (Peripheral neuropathy). (AR 24.)

At step four, the ALJ concluded Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work, but with the following exertional limitations:

> [T]he claimant can only occasionally climb ladders, ropes, and scaffolds and can frequently perform all other postural activities; she cannot reach overhead and can frequently reach in all other directions; she can frequently handle and finger; and she cannot have concentrated exposure to extreme cold, vibration, and hazards (e.g., unprotected heights, moving mechanical parts).

(AR 24.)[5]

---

[5] The RFC did not change from the ALJ's prior written opinion. (AR 157.) The Dictionary of Occupational Titles defines light work as follows:

> Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Dictionary of Occupational Titles Appendix C-Components of the Definition Trailer, 1991 WL 688702. The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10, *available at* 1983 WL 31251 (Jan. 1, 1983).

**MEMORANDUM DECISION AND ORDER - 5**

Relying upon the testimony of the vocational expert from the first hearing on June 3, 2021, the ALJ determined at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform given her age, education, work experience, and RFC, such as: Cashier II; Marker; and Parking lot attendant. (AR 31, 161.)[6] The ALJ therefore concluded that Plaintiff had not been under a disability since August 2, 2019, the date the application was filed. (AR 31.)

## DISCUSSION

Plaintiff raises a single issue on appeal: Whether the ALJ erred in his evaluation of Plaintiff's subjective symptom testimony concerning her physical impairments. Plaintiff contends the RFC is not supported by substantial evidence.

## 1.    Subjective Symptom Testimony

Plaintiff testified that she was unable to work full-time because of interruptions from, and an inability to persist, due to her physical impairments. (AR 25.) She last worked in 2017. (AR 69.) In a written function report dated October 27, 2019, Plaintiff stated she could not stand for very long, walk very far, or lift anything heavy. (AR 430.) She stated she had difficulty bending, going up or down stairs, and that her hands "give out" because of carpal tunnel. (AR 430, 72.) Because of her degenerative disc disease and diabetic neuropathy, she experienced constant pain from "head to toe." (AR 430, 435.) She was able to perform chores such as making simple meals, washing dishes, laundry, and some light cleaning, for about five to fifteen minutes each day, before she had to stop

---

[6] In contrast with the ALJ's prior opinion, the ALJ did not alternatively assess whether Plaintiff could perform sedentary work. (AR 161.)

**MEMORANDUM DECISION AND ORDER  - 6**

and rest. (AR 71, 432.) Otherwise, she spent her day watching television, reading, or connecting with others via social media. (AR 431, 434.) She shopped for food once a month with assistance from a friend, and if she needed additional groceries, she ordered them via online delivery. (AR 72.)

At the August 2, 2022 hearing, Plaintiff elaborated on her functional limitations. Because of carpal tunnel she dropped things and experienced cramping in her dominant right hand, and her left hand falls asleep. (AR 70, 72.) Although she takes pain medication, her pain is constant throughout the day and never completely goes away. (AR 70.) Nerve blocks relieved her neck and back pain only temporarily. (AR 73.) To relieve pain, she testified that she lays down throughout the day while applying heating pads or ice. (AR 71.) A friend visits once a week to help her shower, because she feels off balance due to neuropathy in her legs and feet. (AR 73, 75.) She estimated she could walk one block, stand for ten minutes, and sit for an hour before she experienced pain. (AR 75 – 76.)

The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 26.) The ALJ found that Plaintiff's subjective symptom testimony was inconsistent with the record, because: Plaintiff had no medically determinable impairments that could reasonably be expected to cause the severity of pain Plaintiff alleged; Plaintiff failed to comply with treatment; her activities

MEMORANDUM DECISION AND ORDER  - 7

of daily living were inconsistent with her testimony; and she had a weak work history.

(AR 28 – 29.)

>    A.    *Legal Standard*

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). *See also Smartt v. Kijakazi*, 53, F.4th 489, 494 (9th Cir. 2022) (articulating the clear and convincing standard); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (setting forth the two-part test). It is "not sufficient for the ALJ to make only general findings; he must state

**MEMORANDUM DECISION AND ORDER - 8**

which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). An ALJ must identify the testimony that is found not credible and link that testimony to the particular parts of the record supporting the non-credibility determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Failure to do so is legal error. *Id*.

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment,

responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld even if not all of the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B.    *Analysis*

Plaintiff argues that the ALJ incorrectly applied the two-part test for evaluating Plaintiff's subjective complaints of pain; substantial evidence in the record did not support the ALJ's conclusion that Plaintiff failed to comply with treatment; and, the ALJ did not provide an analysis as to how Plaintiff's daily activities supported a finding that she could return to full-time competitive employment or otherwise contradicted her testimony. Defendant contends the ALJ reasonably found that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence; substantial evidence supported the ALJ's conclusion that Plaintiff failed to comply with treatment recommendations; and substantial evidence supported the ALJ's conclusion that Plaintiff's daily activities suggested she was not as limited as she alleged. Defendant also

argues that the ALJ reasonably considered Plaintiff's poor work history in concluding Plaintiff's symptoms were not as severe as alleged. Plaintiff did not challenge this reason in her opening brief, or address it in her reply.

### (1)    *Objective Medical Evidence*

The ALJ found Plaintiff's allegations "strikingly exaggerated on their face," and found "no medically-determinable impairment or combination of impairments" in the record that could "reasonably be expected to cause the head-to-toe pain" that Plaintiff alleged. (AR 28.) The ALJ supported this statement with reference to objective medical evidence that demonstrated moderate degeneration of Plaintiff's neck and low back, moderate problems in her shoulders, mild carpal tunnel syndrome, a normal gait, grossly intact strength in the bilateral upper extremities, and normal muscle bulk and tone upon physical examination. (AR 28.)

The Court agrees with Plaintiff that the ALJ's analysis is flawed. Pl.'s Mem. at 13 – 15. (Dkt. 15.) The ALJ erroneously refuted Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, because Plaintiff's objective findings could not "reasonably be expected" to cause the severity of pain she reported experiencing. (AR 29.)  This is an incorrect application of the two-part test. A claimant "need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("[T]he claimant need not show that her

impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."). Instead, the test requires "only that the causal relationship be a reasonable inference, not a medically proven phenomenon." *Id.*

Here, Plaintiff established she suffers from medically determinable impairments—degenerative disc disease of the lumbar and cervical spine; diabetes with peripheral neuropathy; adhesive capsulitis bilaterally; and carpal tunnel syndrome—all conditions which could reasonably be expected to produce pain. Objective medical evidence showed the following: MRI – lumbar spine: moderate left foraminal stenosis and mild right foraminal stenosis, disc osteophyte complex, mild right facet arthropathy, and grade 1 retrolisthesis at L4 – L5; L5 left hemisacralization with synchondrosis, which could represent a pain generator (AR 834 – 35); MRI  – joint upper extremity: injuries to the inferior joint capsule, inferior glenohumeral ligament and anteroinferior fibrocartilaginous labrum; MRI neck and spine: posterior disc osteophyte complexes at C5-C6 and C6-C7; moderate right and mild left C6-C7 and C7-T1 foraminal narrowing; and mild left C5-C6 canal narrowing (AR 1011); adhesive capsulitis of right shoulder revealed by x-ray and MRI (AR 1323, 1619); pain of left shoulder joint (AR 1208; 1274); a partial-thickness, articular-sided, intermediate-grade tear of the right rotator cuff (AR 1619 – 20); and mild bilateral carpal tunnel syndrome bilaterally (AR 871), with left endoscopic carpal tunnel release surgery on June 11, 2020 (AR 944).

Plaintiff also suffers from diabetic neuropathy, which may have been the cause of her bilateral hand pain. (AR 1066.) Symptoms of diabetic neuropathy were present in

**MEMORANDUM DECISION AND ORDER  - 12**

both feet – bilaterally, she had diminished/absent sensation; abnormal monofilament wire test; decreased sensation on the dorsum of the foot; and loss of protective sensation. (AR 1297.) Records revealed she was diagnosed also with chronic pain syndrome. (AR 1443.)

Consequently, the ALJ was required to evaluate factors such as: (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence—not whether these impairments could reasonably be expected to produce the degree of pain Plaintiff alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *Smolen*, 80 F.3d at 1282. *See also* SSR 96-7p (the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms). Instead, here the ALJ improperly rejected Plaintiff's testimony on the grounds that her allegations were "strikingly exaggerated," because her conditions simply did not corroborate the degree of pain she alleged. (AR 28.) This constitutes error.

Nor does Defendant's argument convince the Court. Defendant asserts that the ALJ was entitled to rely upon the objective medical evidence as a "useful indicator" to assess the severity of Plaintiff's pain, citing 20 C.F.R. § 416.929(c)(2). Def.'s Brief at 3. (Dkt. 21.) Section 416.929(c)(2) does state that "[o]bjective medical evidence…is a useful indicator to assist us in making reasonable conclusions about the intensity and

persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." However, the regulation clearly directs the ALJ to "not reject" statements about the intensity and persistence of pain or other symptoms or about the effect symptoms have on a claimant's ability to work "solely because the available objective medical evidence does not substantiate" the claimant's statements. 20 C.F.R. § 416.929(c)(2). Yet, that is precisely what the ALJ did here when he concluded that Plaintiff's medical conditions did not support Plaintiff's statements about the intensity and persistence of her pain. (AR 28.)

The Court does not find the ALJ's references to medical records documenting a normal gait on multiple examinations and grossly intact strength during an evaluation on September 14, 2021, constitute substantial evidence supporting his conclusion that Plaintiff's statements about the severity of her pain were exaggerated. (AR 28.) First, the ALJ failed to explain how a normal gait is inconsistent with Plaintiff's complaints concerning the severity of her pain. *See Debra D. B. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-01811-HZ, 2020 WL 118255, at *6 (D. Or. Jan. 9, 2020) (finding ALJ failed to explain how certain medical records contradicted or failed to support plaintiff's allegations). One can have a normal gait but simultaneously experience pain.

Second, the ALJ omitted pertinent findings from the September 14, 2021 evaluation, which showed reduction in neck range of motion; focal tenderness to the cervical facets and pain reproduction with facet loading; positive TTP bilateral C5-C6 facets, C6-C7 facets, and C7-T1 facets; reduced anterior range of motion and posterior range of motion, bilateral shoulders; positive TTP bilateral shoulders; and positive empty

**MEMORANDUM DECISION AND ORDER - 14**

can bilaterally. (AR 1656.) The ALJ's reference to intact strength was only to the treatment provider's neurological findings related to the bilateral upper extremities. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding the ALJ erred because they selectively quoted from treatment records). Defendant's attempt to find other evidence in the record to support the ALJ's findings[7] is an impermissible *post hoc* rationalization that the Court may not perform. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

### (2)  *Non-Compliance with Treatment*

The ALJ rejected Plaintiff's testimony in part, based upon Plaintiff's non-compliance with treatment, specifically her refusal to attend physical therapy, and her failure to follow dosing instructions for medication. (AR 28.) The ALJ found that, if Plaintiff's symptoms did not "trouble her enough to motivate her to seek and comply with aggressive treatment," that it was difficult to accept her assertion that her symptoms were disabling. (AR 28.) Plaintiff asserts that the ALJ's conclusions were erroneous, because he did not consider Plaintiff's reasons for declining physical therapy, or the fact that she sought other treatment for her pain, which consisted of epidural steroid injections, surgery, diagnostic imaging, and pain medication. Pl.'s Mem. at 7, 16. (Dkt. 15.) Plaintiff contends that Defendant's arguments constitute *post hoc* rationalizations in an attempt to bolster the ALJ's findings. Reply at 4. (Dkt. 22.) The Court agrees.

---

[7] *See* Def.'s Brief at 3 (citing to records showing full strength or almost full strength in her legs and good strength in her arms.) (Dkt. 21.)

MEMORANDUM DECISION AND ORDER  - 15

When a claimant complains about disabling pain but fails to seek treatment or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the claimant's complaints about the severity of their pain unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). A review of the record concerning Plaintiff's refusal to attend physical therapy reveals that, on August 13, 2021, Plaintiff's provider discussed the need for "intense and continued physical therapy after a manipulation under anesthesia" to treat her adhesive capsulitis. (AR 1818.) Plaintiff previously attended physical therapy from December 28, 2020, to March 25, 2021, and again for an initial evaluation May 20, 2021. (AR 1642, 1416, 1343 – 1368.) Plaintiff stated she "could not stand the pain," and that physical therapy made her pain worse. (AR 1818.)

Following a physical therapy appointment on March 19, 2021, Plaintiff reported on March 22, 2021, that her shoulder was "very painful for two days after [her] last visit." (AR 1365.) The ALJ failed to discuss Plaintiff's reasons for refusing physical therapy, or otherwise comment on her course of treatment during physical therapy. *See* SSR 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," or other explanatory information in the record.)

Next, the Court does not find that Plaintiff's failure to follow dosing instructions for medications constitutes a legally sufficient reason for the ALJ's rejection of Plaintiff's pain testimony. The ALJ makes reference to treatment notes dated April 12, 2022, for a

diabetes check. (AR 1703 – 1707.) Plaintiff reported that she had not increased the dosage of a specific insulin medication, Tresiba,[8] as discussed at her last visit. (AR 1707.) This medication was prescribed to treat Plaintiff's diabetes, not specific to her pain. (AR 1707.) A review of the medical records related to Plaintiff's pain management, however, reveals no similar notations concerning her prescribed pain medications, which included Percocet and Tramadol, and that she adhered to the terms of her pain contract regarding narcotic pain medication. (AR 1654, 1677 – 78, 1680, 1684.)

Last, the Court finds Plaintiff's failure to seek "aggressive" treatment is not a clear and convincing reason supporting the ALJ's adverse symptom testimony finding. The record reflects Plaintiff underwent nerve root blocks, numerous epidural steroid injections, and carpal tunnel surgery to address her pain. (AR 899, 901, 903, 906, 907, 1014, 1017, 1020, 1022, 1184 – 85, 1323, 1326, 1664, 1668, 1059.) She obtained x-rays and MRIs in an attempt to seek appropriate treatment. (AR 660, 662, 663, 834 – 35, 1011, 1184 – 85, 1619 – 20.) And, Plaintiff took narcotic medications to treat her pain. (AR 1654, 1677 – 78, 1680, 1684.) There is no evidence in the record that Plaintiff's providers recommended further surgery. It is therefore unclear what the ALJ meant by a lack of "aggressive" treatment considering Plaintiff's treatment consisted of more than mere conservative pain management. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750–51

---

[8] Tresiba® is a long-acting basal insulin indicated to improve glycemic control in patients 1 year of age and older with diabetes. https://www.novomedlink.com/diabetes/products/treatments/tresiba.html. (https://perma.cc/WER4-NQ6G).

(9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

### (3)    *Daily Activities*

Finally, the ALJ found Plaintiff's daily activities suggest she is not as limited as she alleged. (AR 28.) The ALJ cited Plaintiff's reported ability to handle self-care, prepare meals, complete household chores, shop in stores, manage finances, read, and spend time with others. (AR 28.) Although the ALJ acknowledged Plaintiff testified she needed assistance with activities of daily living, such as showering, he found her allegations "not consistent with the evidence," citing Plaintiff's "normal gait on multiple exams." (AR 28.) Plaintiff contends the ALJ failed to show how any of Plaintiff's activities transfer to the workplace or demonstrate she met the threshold for full-time competitive employment. Defendant claims the ALJ appropriately disregarded Plaintiff's unsupported, self-serving statements concerning her physical abilities.

While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010).

Here, the Court finds the ALJ did not adequately explain why Plaintiff's activities contradicted her testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff testified that the activities she performed throughout the day were punctuated by rest. (AR 71.) She testified that she reclines as much as three to four hours each day to relieve her pain. (AR 49.) She spends no more than ten minutes doing dishes or making something to eat before she sits down and rests. (AR 71.) Her father helped her make her meals. (AR 50.) Friends helped her with laundry or grocery shopping. (AR 72.) When she went to the grocery store, she used a cart to help her navigate the aisles and walk from the car to the entrance. (AR 75.) A friend also visited once each week to help Plaintiff shower. (AR 73.) Plaintiff testified she could walk far enough to take the garbage out and check her mail. (AR 75.) She estimated that standing longer than ten minutes, and sitting longer than one hour at a time, caused her pain. (AR 48, 75.) She testified that the neuropathy in her feet and toes throws her off balance. (AR 47.)

Plaintiff's daily activities, as she described them in her testimony, were consistent with her statements about the impairments caused by her pain. The ability to prepare simple meals, perform occasional chores, shop in stores and care for herself with significant assistance, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying down most of the day, is consistent with the pain that Plaintiff described. It is also consistent with an inability to function in a workplace environment. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Accordingly, the supposed inconsistencies between Plaintiff's daily activities and her testimony do not satisfy the

requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony regarding her pain-related impairments.

### (4)  *Work History*

The final reason the ALJ proffered for discrediting Plaintiff's symptom testimony was her poor work history, which showed sporadic employment for the past fifteen years. (AR 29.) The ALJ inferred that Plaintiff's work history was explained by something other than her current medical conditions, and therefore discredited Plaintiff's symptom testimony. (AR 29.) Plaintiff did not challenge this reason in her opening brief, nor did she respond to Defendant's argument in her reply brief.

A poor work history may constitute a convincing reason to discredit a claimant's symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Nonetheless, the Court does not find that this reason, standing alone, constitutes substantial evidence to uphold the ALJ's adverse findings regarding Plaintiff's subjective symptom testimony. *C.f. Batson*, 359 F.3d at 1197 (finding one of the reasons given by the ALJ was erroneous, but concluding the error was harmless "in light of all the other reasons given by the ALJ" to support his adverse credibility finding). Moreover, the record indicates that Plaintiff did work, albeit somewhat sporadically. (AR 383.) She worked at various minimum wage service jobs from 1999 – 2011. (AR 419.)[9] The gap between 2012 – 2014 is unexplained, but Plaintiff stated she was unable to work in 2015

---

[9] Defendant attempts to penalize Plaintiff for her lack of earnings. Def.'s Brief at 6. (Dkt. 21.) Plaintiff can hardly be penalized if the work she obtained paid little in the way of hourly wages. It is not clear from the record whether Plaintiff worked full or part time.

**MEMORANDUM DECISION AND ORDER  - 20**

and 2016 because of two back surgeries. (AR 474.) She last worked in 2017 at a landscaping business as a temporary worker. (AR 69, 474.) She was incarcerated between October of 2017 and June of 2019. (AR 597 – 659.) There was also a period of time in 2019 when she was homeless. (AR 430, 765, 771.)

The Court finds the ALJ did not adequately explain how Plaintiff's work history supports a finding that Plaintiff's pain symptoms are less severe than she alleged. Nor does this reason, standing alone, constitute substantial evidence to support the ALJ's decision.

## 2.    RFC

A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). The ALJ assesses a claimant's RFC "based on all the relevant evidence in [the] case record." *Id*. § 416.945(a)(1). The ALJ must consider both the medical evidence and "descriptions and observations of the claimant's limitations from the claimant's impairment(s), including limitations that result from the claimant's symptoms, such as pain, provided by" the claimant, family, friends, and other people. *Laborin v. Berryhill*, 867 F.3d 1151, 1153–54 (9th Cir. 2017) (citing 20 C.F.R. § 416.945(a)(3)). The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." *Id.* (quoting SSR 96–8p, 61 Fed. Reg. at 34478). In other words, the ALJ must take "the claimant's subjective experiences of pain" into account when determining the RFC. *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014)); *see also Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding [the claimant's] alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of [the claimant's] RFC.").

Here, the Court finds the ALJ improperly discounted Plaintiff's symptom testimony. The ALJ's error affected the ALJ's assessment of Plaintiff's RFC, which allowed for light work at step five, and required the ability to stand and walk, off and on, for a total of approximately six hours in an 8-hour workday; frequent reaching, handling, and fingering; the ability to frequently perform postural activities, such as bending or squatting; and the ability to exert up to 20 pounds of force occasionally and 10 pounds frequently. Accordingly, the Court finds the ALJ's RFC assessment is not supported by substantial evidence in the record as a whole, and is the product of legal error.

## CONCLUSION

The Court concludes that the reasons given by the ALJ for rejecting Plaintiff's subjective symptom testimony about her pain are not supported by substantial evidence. Accordingly, the ALJ's decision will be reversed and remanded. In this case, the record does not conclusively show that Plaintiff is disabled, and therefore this matter warrants further proceedings. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Therefore, as requested by Plaintiff, the appropriate remedy is remand for further proceedings.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED that:**

1) The decision of the Commissioner of Social Security is **REVERSED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **February 21, 2024**

Candy W. Dale
United States Magistrate Judge